May I please quote Richard O'Reilly for the petitioner in this case? The issue in this case is whether or not substantial evidence supports the immigration judge's adverse credibility determination. The immigration judge in this case bases his adverse credibility determination on alleged inconsistencies in supporting documentation sent from India to the petitioner here in the United States. In this case, more specifically, the affidavit from the father-in-law describing or mentioning the fact that the petitioner's husband was arrested in February of 1996, for example, when the petitioner testified and her application indicates that her husband had been arrested on January 27th and released on February 2nd. And the petitioner's explanation for that was she didn't know why the father-in-law stated that he was arrested in February as opposed to January and released in February. But she indicated that the father-in-law may have just had in mind when her husband was released. I think that's a very reasonable explanation. And that's besides the point. Any inconsistency in the documentation sent by the father-in-law should not be used for the basis of her credibility, especially since, one, she did not offer that document. Two, the judge himself admitted that her testimony in court was consistent. And that will be found in case you want to look at the administrative record at 163. The judge states that, that the petitioner, the respondent in court, was not inconsistent in this courtroom as far as her arrests go, which is what's critical. Well, the inconsistency, I thought, was with respect to the declaration. The declaration states that the husband was arrested in January and released in February. In another instance, her declaration states that she was detained for five days. And she testified initially that she was detained for six days. She corrected that. I'm not sure if she ever corrected that.  She said she was arrested on the 13th of April on direct examination. However, on cross-examination, when challenged with that testimony, she said she was arrested in the middle of the night, on the night of the 13th of April, but in the morning after midnight, that is the morning of the 14th of April. That would account for her confusion earlier why she stated that she was detained for six days as opposed to five days. She always maintained that she was released on the 19th of April. And the judge saw this as an inconsistency because of what she told the or what she allegedly told the asylum officer during her interview. The asylum officer's notes indicates that she was arrested on the 14th and released on the 19th, which is quite consistent with being arrested after midnight on the night of the 13th of April. Her declaration specifically states that her husband gave a speech on Vaisakhi Day. Vaisakhi Day happens to be the 13th of April of every year. That, in and of itself, should have clarified the matter for any reasonable fact finder in this case, because the only other inconsistency that the judge alleged is the fact that she omitted the consequences of the abuse she suffered in the police station. That is the one thing that she didn't have an explanation for. She said she simply did not remember to include that in her declaration. However, omitting the consequence of the abuse does not negate the fact that she suffered abuse at the hands of the police. And she did testify, and the doctor's report or letters that were sent in support of her application also mentioned the fact that she was abused, tortured, and used a very peculiar terminology, threatened abortion. And she testified that that was referring to her miscarriage. However, the judge didn't find any of this reasonable at all and discounted all of her explanations. And if the record is examined as it stands, the inconsistencies alleged by the judge, if they exist at all, have to do with documentation, and not her application per se, but documentation. The exhibits from the doctor, the letter from the lawyer who was retained to file a habeas for the petitioner, and the affidavit from the father-in-law. These are what the judge basically bases a lot of his inconsistencies on, not to mention the fact that he also indulges in a lot of speculation as to what a medical professional would write in English from India, that the language in the letter, he didn't believe that that language would come from a doctor, for example. What was the explanation given for essentially the same information but two years apart? Those are the two letters from the hospital, from the doctor that you're referencing? Yes. The petitioner was unable to explain why she received two letters from the doctor. All she said was they were both facts to her on the same day. At the hearing, I argue that the letters from the doctor supplement, the second one supplements the first, because it didn't mention specifically physical injuries. It didn't mention anything about a miscarriage, for example. However, the second letter refers to the threatened abortion, which the petitioner testified is referring to the miscarriage she suffered as a result of the rape at the police station. And since the doctor was not around to be cross-examined, the government, by the way, had the opportunity to investigate these documents to see if the doctor actually wrote this. Where did the documents come from? They came from a doctor in India. No, I know that. But you said that she didn't offer them? Well, she did offer them. Okay. She offered them. She said they were facts to her by her father-in-law. Okay. And she submitted them to the asylum officer. So she solicited the letters then via her father-in-law? Yes. I see. And what, since we're on letters, do you make of the difference in font that is on the attorney's letter from April 26th of 1999? Is that significant? Because it seemed to be to the hearing judge. I don't think that's significant. The attorney's letter is not particularly about dates. The only difference there is the fact that somebody erased the month and typed in October in a different font. That could have been a mistake done by the attorney himself or the clerk for the attorney after realizing that they typed in the wrong date. There was no evidence at the hearing to suggest that the alteration was done here in the United States, because the Petitioner testified that she received the documents faxed to her in that condition, and there was no forensics examination conducted on that particular document. And no evidence was submitted to show that the alteration took place in the United States. So her explanation that the lawyer may have corrected the mistake himself is reasonable and should have been believed. Okay. Thank you. You have a minute and a half for rebuttal. Good morning, Your Honors. May it please the Court, Andrew Jevis on behalf of the Attorney General. This Court should deny the petition in purview because substantial evidence supports the agency's finding that Ms. Carr is incredible. Now, the Petitioner's counsel mentioned the dates as part of the inconsistencies that the immigration judge focused on. There were other inconsistencies that the immigration judge noted. For example, after her second arrest, Ms. Carr testified that she was released because her father-in-law paid a bribe. However, in a declaration, she states that she was released because hundreds of people saw her being arrested, and therefore the police felt they had to release her. This is a direct inconsistency. The immigration judge also focused on the omission that she was pregnant and miscarried. She never mentioned that to the asylum officer. Why is that critical? She's laid out in some detail, including naming her assailant, two occasions on which she was raped, and at least the first occasion she was raped repeatedly. She's quite specific about that. She repeats it on a number of occasions and is quite consistent in that testimony. The only thing that gets added to that is the fact that she was pregnant and as a result of the rapes miscarried. Why is that omission an inconsistency? It's not an inconsistency. It's more just the immigration judge sitting as the fact finder listening to the whole case. It's just another thing that he focused on as going against her credibility. He focused on numerous other things as well and just stated that that omission was. . . Why does the fact that she would omit the miscarriage tend to make us disbelieve that she was raped? Because it's a very sympathetic fact and something that. . . Are you agreeing that it's not an inconsistency? I'm not. . . But that was an inconsistency. The board. . . The immigration judge said it was an omission, not that it was inconsistent. I'm not agreeing that it was not an inconsistency. It's an omission in her testimony. It's a very sympathetic fact, which most people, since it's her burden to prove that she's eligible for asylum, that the. . . I think more so that the immigration judge focused on was that she never had an explanation for it. I think in the end she just admitted that she overlooked this fact. And it's just another thing. And this Court, in the Wayne case, said you only need one ground supported by substantial evidence that goes to the heart of the matter. And then this Court must uphold. So this is just another thing attacking her credibility, including all the dates, her blatant inconsistency regarding her release. She provided. . . Again, this is her burden to prove. She provided numerous documentation that she solicited, which Petitioner's Counsel mentioned. The two doctor's letters, when asked about the inconsistency, she had no explanation. She just stated that her father-in-law provided them to her after her asylum interview. Regarding the attorney's letter and the date, Ms. Carff provided that letter with the October font change, which supported her theory that she was on her way to meet with the attorney when she was arrested that second time, which is an important point because it's going . . . She's using it to bolster her case. But as you see on that attorney's letter, the font is quite different. Also, that attorney's letter states nothing about her, focuses more on her husband's arrest. She testified that she told the attorney about being raped and slapped and being in police custody. That attorney's letter states nothing. There are numerous inconsistencies and omissions that the immigration judge focused on, but he also provided an alternative if this Court would find her to be credible. He stated that the 2003 . . . that the government had rebutted the presumption of well-founded fear because of the 2003 country reports, which stated that there was a significant change in the Pujab region and that the conditions had greatly improved. Also, that country report states that the only high-risk individuals are the high-profile militants, which Ms. Carr is not one of or has not testified to be one of. Also, Ms. Carr, after her second arrest, was living in three different areas for about a year and a half and never testified as to any problems in those other areas. Therefore, relocation is a possibility for Ms. Carr. Therefore . . . oh, I'm sorry, I'd also like to point out one more thing. Ms. Carr has been gone from India since 1999. She has alleged no one's . . . she's not testified to anyone after her, following her, asking about her, threatening her, nothing of these sorts. It does not show that there's any current interest in her at this time. In conclusion, substantial evidence supports the agency's finding that she is not credible because of the inconsistencies and omissions that went to the heart of her claim. And if this Court were to find her credible, the government has rebutted the presumption of well-founded fear through the 2003 country reports and the possibility of relocation, which Ms. Carr testified living for a year and a half in three different locations without any problems. Counsel, I'd like to take you back to the second arrest. Of course. I understood you to say that on second arrest that she said in her declaration that hundreds of people had seen her and so the police had to release her. Yes. And that she said elsewhere that her father-in-law paid a bribe. Where did she say that her father-in-law paid a bribe? Just one second, Your Honor. If I may go to get my record? Certainly. I see where she said on page 106 of the administrative record that her father-in-law came to release her. Right. But that is also consistent with what she said in her declaration because she refers to her father-in-law coming to the police station after the second arrest. No, I'm sorry. On her declaration on page 530, she states that she was released because hundreds of people In the same paragraph, though, it refers to her father-in-law being at the police station at the time. I'm sorry. I don't see that, Your Honor. On page 530? Let's see. I have five. He kept me hostage for nine days. They had to release me because hundreds of people had seen them abducting me. I'm sorry. I just do not see where you see the father-in-law. Yeah. If you look at the next paragraph. I'm sorry. No, the next sentence. Hundreds of people had seen them abducting me. I was ordered to be present at the police station whenever required. SHO, which is her rapist, threatened my father-in-law to keep silent or to get ready to see the dead body of his son. Right. It says nothing about him paying the bribes, her father-in-law. No, it doesn't say anything about bribes. You're the one who mentioned bribes. I can't find bribes in here. Where does she testify about bribes? Okay. That's what I asked you. Oh, I'm sorry, Your Honor. That was from the declaration. And then... I apologize. One second. Okay. On page 141 of the testimony, the first real question. And your father-in-law paid the bribes both times you were arrested. Yes, ma'am. Is that correct? So he secured your release. Yes. Okay. I apologize for taking over. That's helpful. Thank you very much. Any other questions, Your Honors? Thank you. Thank you. Thank you. Mr. Oriaki, you have a minute and a half. I think I'll just address the country conditions report. The judge stated that in case his fact-finding is overturned, that he doesn't believe that she has a well-funded future prosecution because there's been changes and only well-known militants are now at risk. That's from the country conditions report of 2003. However, even the country conditions report for 2009 clearly states that very serious human rights abuses continue. With police raping women in police detention, torturing people with impunity. And the 2005 report states the same thing, which was attached as an exhibit to the brief that was sent in in this case. The general statement, I don't know where the judge got the fact that only well-known militants are at risk in India. This particular petitioner testified very credibly in a detailed manner about what happened to her and why the police were after her. And there was nothing referred to or pointed out in any country conditions report that refuted that. And the general statement that only well-known militants are at risk just is insufficient to overcome the government's burden. If the petitioner had been found credible, the government's burden would have had to show, would be to show that country conditions have changed by a preponderance of the evidence to such an extent that she would no longer fear going back. The fact that she was in hiding in Dehradun and in Agra and then in Delhi before leaving India does not negate her well-founded fear. We understand. Your time has expired. Let me, apart from the case that was just argued, let me simply, the merits of the case. You have moved to be relieved as counsel, but that motion has not been granted and you remain counsel of record. I understand that. That is understood. And as I understand it, you are no longer with the Roman law firm? There is no longer a Roman law firm in California. In California. All right. Thank you.
judges: Stotler, Schroeder, Bybee